UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

AFG INDUSTRIES, INC., )
)
    Plaintiff/Counter-Defendant, )
)
v. )
) No. 2:05-CV-221
UNITED STEELWORKERS OF AMERICA ) Chief Judge Curtis L. Collier
an International Union, AFL-CIO, CLC, and )
UNITED STEELWORKERS OF AMERICA, )
LOCAL UNION NO. 456 (Greenland), )
)
    Defendants/Counter-Claimants )
)
)

## **MEMORANDUM**

Before the Court are cross motions for summary judgment filed by Defendants United Steelworkers of America and United Steelworkers of America, Local Union No. 456 (collectively "Defendants") and Plaintiff AFG Industries, Inc. ("Plaintiff") (Court File Nos. 11, 13). Both Defendants and Plaintiff filed memorandums in support of their motions (Court File Nos. 12, 14). Each party has filed responses to the opposing party's motion (Court File Nos. 16, 18), and replies to the responses (Court File Nos. 19, 21). For the following reasons, the Court will **GRANT** Defendants' motion for summary judgment (Court File No. 11) and will **DENY** Plaintiff's motion for summary judgment (Court File No. 13).

### I.    **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff and Defendants are parties to a Collective Bargaining Agreement ("CBA") that contains a grievance and arbitration procedure. Defendant United Steelworkers International Union is the exclusive bargaining representative for certain hourly employees at Plaintiff's Greenland, Tennessee plant as set forth in the CBA between the parties. Court File No. 5, Counterclaim of Defendants ("Ctrclm"), at ¶ 4. The CBA provides for a grievance resolution procedure "[s]hould any grievance or misunderstanding arise between the Company and the Union with respect to rates of pay, wages, hours of employment and other working conditions as to the interpretation or application of, or compliance with, the provisions of this Agreement[.]" Court File No. 1, Exh. 1A, CBA, at 9. If the parties are unable to settle or dispose of a grievance to their mutual satisfaction, either party may, within ten calendar days, request in writing the grievance be submitted to arbitration. *Id*. at 11.

On March 2, 1998, Defendant filed a grievance demanding the Cutter Machine Operator ("CMO") job classification be reevaluated. Court File No. 5, Part 2, Grievance No. L-10-8. Although Plaintiff agreed to review the position, the parties were unable to reach an agreement, so the grievance was appealed through the grievance procedure to arbitration. Ctrclm at ¶9. Both parties agreed to the arbitration and consented it be handled by Arbitrator William H. Holley. *Id*. On March 22, 2004, Arbitrator Holley issued an arbitration decision in Grievance No. L-10-8 establishing the appropriate rate of pay for certain employees in the CMO job classification. Court File No. 15, Defendants' Statement of Undisputed Facts ("Def.'s SUF"), at ¶¶4-5. During his analysis of the grievance, Arbitrator Holley stated, "[t]his decision applies to the evidence presented about CMOs on line two." Court File No. 1, Exh. 5, Arbitrator Holley's Opinion and Award

("Holley Award"), at 11. Arbitrator Holley ultimately directed Plaintiff to make changes in the points according to his opinion and "to make the changes in wages, effective 15 days prior to the filing of the Grievance and to pay to the CMOs the difference between wages actually received and the adjusted wages resulting from this decision from the date 15 days prior to the filing of the Grievance to the date of execution of this decision." *Id*. at 22.

Plaintiff interpreted the Holley Award as granting back pay only to workers on line two, but not those on line one. Court File No. 14, Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Memo"), at 5. Defendants, on the other hand, interpreted it as awarding back pay to all CMOs. *Id*. Both parties participated in a conference call with Arbitrator Holley in an attempt to clarify his award. Court File No. 14, Part 2, Plaintiff's Statement of Undisputed Facts ("Pl.'s SUF"), at ¶5. While it is disputed what actually occurred during this phone call,[1] it is undisputed Arbitrator Holley declined to issue a written clarification of his award. After the telephone conference, Plaintiff issued back pay to the CMOs on line two, excluding the CMOs on line one. Pl.'s SUF at ¶6. As a result of Plaintiff's implementation of the Holley Award, Defendant filed a second grievance, Grievance No. L-31-4, alleging Plaintiff failed to abide by Arbitrator Holley's decision by refusing to pay back pay to all CMOs. Def.'s SUF at ¶9. The parties were unable to settle the grievance, so it was appealed to Arbitrator Susan Brown on June 8, 2005. *Id*. at ¶12.

Arbitrator Brown concluded the plain language of the Holley Award commanded the wage

---

[1] Plaintiff argues, during the telephone conference, Arbitrator Holley confirmed his back pay award was confined to line two CMOs. Pl.'s Memo at 5. Defendants, on the other hand, contend Arbitrator Holley declined to clarify his decision and indicated the written opinion constituted his entire award. Court File No. 17, Defendant's Response to Plaintiff's Statement of Undisputed Facts, at ¶5.

determination should apply to all employees in the CMO job classification, regardless of which line they worked on. Def.'s SUF at ¶20. Arbitrator Brown acknowledged Arbitrator Holley's statement his decision applied to evidence presented about CMOs on line 2. *Id*. at 21. However, she concluded it only referred to the evidence consider by Arbitrator Holley and not the application of the award. *Id*. at ¶23. She went on to state if Arbitrator Holley had wanted the award to apply to only line 2 CMOs, he would have stated it in his award. *Id*. Arbitrator Brown directed Plaintiff to apply the remedy as set forth in the Holley Award to all CMOs who had yet to be paid back pay for the period of time set forth in the Holley Award. *Id*. at 25.

After receiving Arbitrator Brown's opinion, Plaintiff filed the instant action, requesting the Court to vacate Arbitrator Brown's Award ("Brown Award"). Court File No. 1, Complaint, at ¶1. Defendant counterclaimed requesting the Court to enforce the Brown Award; order Plaintiff to abide by, carry out and fulfill the terms of the award; order Plaintiff to pay prejudgment interest from the date the award was issued until the date of payment; and award Defendants the costs and reasonable attorney's fees incurred by it in the litigation of their counterclaim. Ctrclm. at p. 7. Both parties have filed motions for summary judgment, which are now before the Court.

## III. DISCUSSION

Although there are two separate motions before the Court, both essentially involve the same issues. Plaintiff's argument is the Brown Award did not respect the finality of the Holley Award and did not draw its essence from the CBA. Plaintiff contends this means Arbitrator Brown was motivated by her own sense of fairness or industrial justice and requests the Court to vacate the Brown Award, or in the alternative, remand the case to Arbitrator Holley to resolve the issue of

5

whether the Holley Award applied to all CMO workers or only line two CMO workers. Defendants argue the Brown Award was rationally derived from the CBA, and as a result, must be enforced by this Court. Defendants also request pre-judgment interest, which Plaintiff opposes.

### A. Arbitrator Brown's Award Should Be Given Effect

At the outset, the Court notes the standard of review in arbitration cases is "one of the narrowest standards of judicial review in all of American jurisprudence." *Bruce Hardwood Floors v. S. Council of Indus. Workers*, 8 F.3d 1104, 1107 (6th Cir. 1993); *see also Cleo Inc. v United Paperworkers Int'l Union, AFL-CIO, Local Union 1766*, No. 94-6441, 1995 WL 704191, at *2 (6th Cir. Nov. 29, 1995); *Mercy Mem'l v. Hosp. Employees' Div. of Local 79*, 23 F.3d 1080, 1083 (6th Cir. 1994); *Ap Parts Co. v. Int'l Union, et. al.,* 923 F.2d 488, 491 (6th Cir. 1991). The purpose of this extremely narrow, deferential review is "to promote the finality of arbitration . . . [as] one part of a broader goal of encouraging informal, i.e., non-judicial, resolution of labor disputes." *Bruce Hardwood Floors*, 8 F.3d at 1107. Courts defer to an arbitrator because the parties have bargained for and contracted for the arbitrator's decision. *Wyandot, Inc. v. Local 227, United Food and Commercial Worker's Union*, 205 F.3d 922, 928-29 (6th Cir. 2000).

Notwithstanding such deference, courts will vacate an arbitrator's award if the arbitrator dispensed "[her] own brand of industrial justice," ignored "the plain language of the contract," or failed to "draw [the] essence [of her decision] from the collective bargaining agreement." *Mercy Memorial*, 23 F.3d at 1083. An arbitrator's decision is not within the essence of the agreement where: (1) an award conflicts with express terms of the agreement; (2) an award imposes additional requirements not expressly provided in the agreement; (3) an award is without rational support or cannot be rationally derived from the terms of the agreement; or (4) an award is based on general

considerations of fairness and equity instead of the precise terms of the agreement." *Wyandot, Inc.*, 205 F.3d at 929. However, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id*. (quoting *United Paperworkers Int'l Union v. Misco, Inc*., 484 U.S. 29, 38 (1987)).

The Court recognizes this case presents an unusual situation. This is not a situation where a grievance was filed pertaining to the interpretation of the CBA and then submitted to arbitration. Instead, this case involves a situation where an initial grievance was filed, submitted to arbitration, and an award was issued. After the issuance of the award, an ambiguity arose as to whether Plaintiff was required to give back pay to all CMOs or just line-two CMOs. Rather than submit this issue for clarification to the original arbitrator,[2] *see Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local 24 et al.*, 357 F.3d 546, 554 (6th Cir. 2004) (recognizing the need for an arbitrator's clarification of an ambiguous award when the award is susceptible to more than one interpretation), Defendant chose to file another grievance. Plaintiff, in turn, agreed to submit the issue to another arbitrator.

Due to the unusual set of factual circumstances, the Court was only able to find one case on point concerning this issue. The Court notes the case is from the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit"). While not binding authority on this Court, the Court finds its analysis both instructive and persuasive in resolving this matter.

---

[2]The Court acknowledges the parties participated in a telephone conference with Arbitrator Holley in an attempt to clarify the scope of his award, but it is unclear whether he actually confirmed the scope of his award. There is a difference, however, between making a phone call to an arbitrator to obtain clarification and making a written, formal request to the arbitrator seeking clarification of an award.

7

In *San Antonio Newspaper Guild Local No. 25 et al. v. San Antonio Light Div. et al.*, 481 F.2d 821 (5th Cir. 1973), the court held it would accept as binding on the parties a second arbitrator's interpretation of the original award where the original award was ambiguous. The Union initially filed a grievance on behalf of an employee who had been discharged by the Company. *Id.* at 822. After the parties could not reach an agreement as to the financial implementation of the award, the Company requested the Union to join it in a request to Arbitrator Florey, the original arbitrator, for clarification of his award. *Id.* at 823. The Union refused, stating there was no ambiguity in the award. *Id.* The Company filed a grievance against the Union seeking return of the overage of dismissal pay and pay in lieu of notice received by the employee. *Id.* Soon thereafter, the Union brought a federal court action for enforcement of Arbitrator Florey's original award. *Id.*

While the court action was pending, the Company initiated the procedures of the American Arbitration Association to secure arbitration for the purpose of interpreting the financial aspects of Arbitrator Foley's award. *Id.* Then, the Company and the Union jointly chose Arbitrator Guy Horton for the second arbitration. *Id.* Although both parties participated in the second arbitration, the Union argued Arbitrator Horton was without jurisdiction to consider the matter, and as such, a finding on the merits would be of no force and effect. *Id.* Arbitrator Horton found he had jurisdiction to interpret Arbitrator Foley's award and agreed with the Company's interpretation of the award. *Id.* As a result of Arbitrator Horton's interpretation of Arbitrator Foley's award, the Company moved for summary judgment in the district court, and the court found in favor of the Company. *Id.*

On appeal, the Union's primary argument was Arbitrator Florey's award was unambiguous,

and Arbitrator Horton did not have jurisdiction to interpret Florey's award. *Id*. The Court characterized the Union's primary contention as a challenge to whether the Company's grievance was arbitrable. *Id*. The Court noted under the usual standard it would agree the Company's grievance did not present an arbitrable matter. *Id*. at 824. However, the Court found it unnecessary to decide the issue since Arbitrator Horton's award had resolved the dispute between the parties, and as such, should be given full effect. *Id*.

In the instant case, Plaintiff does not specifically state the issue as whether the second grievance filed by Defendants was arbitrable, but the Court agrees with Defendants that Plaintiff's argument the Holley Award was a clear, final, and binding award may be construed as a challenge to Arbitrator Brown's jurisdiction.[3] The Court notes Plaintiff participated in the arbitration without making any objection to Arbitrator Brown's jurisdiction. Therefore, Plaintiff has waived the issue. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003) ("A party may waive its objection to the jurisdiction of the arbitrators by acquiescing in arbitration with knowledge of possible defect"); *Rock-Tenn Co. v. United Paperworkers Intern. Union AFL-CIO*, 184 F.3d 330, 334 (4th Cir. 1999) ("[U]nconditional submission of an issue to arbitration, without any objection to the arbitrator's authority to decide that issue, [concedes] authority to the arbitrator, or represents 'consent' to arbitration of that issue"); *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) ("[A] party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result"). Plaintiff's argument that refusing to

---

[3]Additionally, Plaintiff cited the following portion of the CBA at least two times: "[t]he arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with the provisions of this Agreement. . ." Pl.'s Memo at 10; Court File No. 21, Plaintiff's Reply Brief, at 4. Since this provision goes to the jurisdiction of arbitrators to settle disputes, the Court finds Plaintiff is challenging Arbitrator Brown's authority to hear the second grievance.

9

participate in the arbitration case was not a favorable route because it would have most likely guaranteed an adverse outcome for it is not persuasive. Regardless of Plaintiff's concerns as to how Arbitrator Brown would have reacted if Plaintiff had made such a challenge, the challenge had to be made to Arbitrator Brown in the first instance in order to preserve it for this Court's review. Since Plaintiff voluntarily submitted to the arbitration without challenging Arbitrator Brown's jurisdiction to hear the grievance, any challenge to her jurisdiction has been waived and cannot properly be considered by this Court.

Even if Plaintiff had not waived the ability to challenge Arbitrator Brown's jurisdiction to interpret the Holley Award, Plaintiff's argument still would not have prevailed because the Court agrees with the result reached in the *San Antonio Newspaper* case, and accordingly, will enforce the Brown Award. First, the Court believes, as did the parties, the Holley Award was ambiguous. Before issuing his decision, Arbitrator Holley noted the decision applied to the evidence presented about CMOs on line two. Holley Award at 11. When the award was stated, however, Arbitrator Holley merely directed Plaintiff to pay *the CMOs* back pay and did not distinguish between line one or line two CMOs. *Id*. at 22 (emphasis added). The fact that the parties could not agree on the meaning of Arbitrator Holley's award and felt the need to call him for clarification shows there was a legitimate dispute as to how the award should have been implemented. While Plaintiff is correct in arguing the Holley Award should have been final and binding on the parties, such enforcement could not take place unless and until the award was clarified.

Usually, when parties cannot agree on the implementation of an award, an action is filed in court seeking confirmation and enforcement of the award. To the extent Plaintiff argues Defendants should have followed that course of action rather than filing another grievance, the Court agrees.

The problem the Court has, however, is although Plaintiff argues Defendants should not have filed a grievance, Plaintiff still agreed to submit the issue to arbitration. Plaintiff could have brought an action arguing the issue was not an arbitrable matter, or as the Court has already discussed above, Plaintiff could have at least contested Arbitrator Brown's jurisdiction to interpret the Holley Award. Plaintiff did neither. Instead, Plaintiff voluntarily participated in the arbitration and then chose to file suit once its desired outcome was not reached. Having submitted the issue to arbitration, Plaintiff must now accept Arbitrator Brown's interpretation of the Holley Award as final and binding on the parties unless Arbitrator Brown dispensed "[her] own brand of industrial justice," ignored "the plain language of the contract," or failed to "draw [the] essence [of her decision] from the collective bargaining agreement." *Mercy Memorial*, 23 F.3d at 1083.

Plaintiff points to the following statement made by Arbitrator Brown as support for its contention she did not draw her opinion from the essence of the CBA and instead issued her own sense of industrial fairness, "my sole task here is to interpret Mr. Holley's Award . . ." Pl.'s Memo at 11. Plaintiff's argument is misplaced, however, due to the context within which this statement was made. Arbitrator Brown began her opinion by declining to reconsider any of Arbitrator Holley's findings, recognizing his rulings were final and binding on the parties. Court File No. 1, Exh. 3, Arbitrator Brown's Opinion and Award ("Brown Award"), at 6. She also noted the Holley Award, upon its issuance, had become incorporated into the parties' agreement. *Id*. Then, Arbitrator Brown stated since the parties disagreed on the meaning and application of the Holley Award, her duty or "sole task" was to interpret the Holley Award. Given this context, it is clear Arbitrator Brown was not stating she was going to disregard the CBA in making her determination; instead, it appears she merely wanted to clarify she was not going to revisit any of the issues already

decided by Arbitrator Holley.

Additionally, Arbitrator Brown did not ignore the plain language of the CBA nor did she fail to draw the essence of her decision from the CBA. In fact, she specifically relied on the CBA to confirm the accuracy of her interpretation of the Holley Award:

> The parties' Job Evaluation Manual, which is incorporated by reference into the labor contract, states:
>
>> Every employee will be classified according to one of the established job titles, using the one which most nearly covers the work which he is performing. . . . Except as noted below, a single rate will be established for each job title. This rate will be paid to all employees who carry that job title.
>
> The two exceptions address probationary/training rates and craft jobs, neither of which is relevant here.
>
> This language obviously contemplates that there is a range of work within a job title but that everyone in a given title will be paid the same rate. Given two possible interpretations of Mr. Holley's award, one that is consistent with the parties' negotiated documents (a single wage rate for a given classification) and one that is not (two wages rates for a single classification), we must assume that Mr. Holley did not intend to vary the language of the agreement.

Brown Award at 8. In light of this portion of Arbitrator Brown's opinion, it cannot be said the Brown Award conflicts with the express terms of the agreement; imposes additional requirements not expressly provided in the agreement; is not rationally derived from the terms of the agreement; or is based on general considerations of fairness and equity instead of the precise terms of the agreement. *Wyandot, Inc*., 205 F.3d at 929. Instead, it is clear Arbitrator Brown relied on the CBA in reaching her conclusion the Holley Award applied to all CMOs, and as such, the Brown Award was in accord with the CBA. As such, Plaintiff's arguments to the contrary are without merit.

Likewise, Plaintiff's alternative argument that the Court should remand this case to Arbitrator Holley to clarify his award is without merit. Generally, when the Court finds an

arbitration award to be ambiguous, it is remanded to the arbitrator for clarification. However, as the *San Antonio Newspaper* court noted, "to do so in this case would be a pointless gesture." 481 F.2d at 825-26. There has already been a clarification of the Holley Award, albeit by a different arbitrator, Arbitrator Brown. If the Court were to remand the issue back to Arbitrator Holley, he would do what Arbitrator Brown has already done, that is, interpret the award by careful reference to the terms of the CBA. The Court believes "an appropriate resolution of this already too-lengthy dispute would in no way be served by remanding to Arbitrator [Holley] for yet another interpretation of his original award." *San Antonio Newspaper Guild Local No. 25*, 481 F.2d at 825-26. Therefore, the Court accepts the Brown Award as final and binding on the parties since it fully resolves the issues between the parties.

## B. Defendants Are Entitled to Prejudgment Interest

Defendants move for an award of prejudgment interest from the date of the Brown Award, March 22, 2004, until Plaintiff actually pays its employees the wages they are owed. Plaintiff states its decision to give back pay to only line two CMOs was based on its good faith interpretation of the Holley Award, and the confirmation it received during the telephone conference. Plaintiff, therefore, ask the Court to deny Defendants' request.

This Court has discretion whether to grant or deny prejudgment interest. *Mills v. River Terminal Ry. Co.*, 276 F.3d 222, 228 (6th Cir. 2002); *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir. 1982). "Prejudgment interest is an element of complete compensation." *West Virginia v. United States*, 479 U.S. 305, 310 (1987). It is used to make a party whole when the adverse party fails to comply with an arbitration award. *IBEW Local No. 573 v. Steen Elec., Inc.*, 232 F. Supp.2d 797, 805-06 (N.D. Ohio 2002); *see also EEOC v. Kentucky State Police Dept*., 80

F.3d 1086, 1098 (6th Cir. 1996) (noting "it is ordinarily an abuse of discretion *not* to include prejudgment interest in a back-pay award . . .") (quoting *Clarke v. Frank*, 960 F.2d 1146, 1154 (2nd Cir. 1992) (emphasis in original).

It has been almost two years since Arbitrator Brown interpreted the Holley Award as applying to all CMOs yet the line one CMOs still have not received the back pay to which they are entitled. Since prejudgment interest is awarded to make whole the party entitled to the award rather than to punish the party withholding payment, Plaintiff's contention it acted in good faith is irrelevant. The Court finds an award of prejudgment interest is appropriate in this case to make whole the employees who are entitled to back pay but have yet to receive it. In the absence of a federal statute establishing the appropriate rate of interest, the rate shall be 10% per annum, as provided under Tennessee law, and shall be applied from the date of Arbitrator Brown's decision until the date the Court enters its judgment. *See Quaker Oats Co. v. Int'l Chem. Workers Union, et al.*, No. 92-5070, 1993 WL 47199, at *3 (6th Cir. Feb. 23, 1993) ("As no federal statute or case mandates a specific prejudgment interest rate, prejudgment interest should have been awarded at a rate of 10% per annum under Tenn. Code Ann. § 47-14-123 (1988)).

### C. Defendants Are Not Entitled To Attorney's Fees And Costs

Although Defendants did not request attorney's fees in their motion for summary judgment, they did request fees and costs in their counter-complaint. Ctrclm. at p. 7. Generally, a prevailing party may not recover attorney's fees in the absence of a statute or enforceable contract providing for a fee award. *Monroe Auto Equip. Co. v. Int'l Union et al.*, 981 F.2d 261, 269-70 (6th Cir. 1992). In the specific context of an action to enforce an arbitration award, there is no such statute, and the Court is unaware of any contract term providing for fees. Thus, the only way Defendants could

possibly receive such relief is upon a showing of "bad faith in the instigation or conduct of litigation." *Monroe Auto Equip. Co.*, 981 F.2d at 270. "[A]n award of attorney's fees . . . is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Id.* (quoting *Ray A. Scharer and Co., Inc. v. Plabell Rubber Prod.*, *Inc*. 858 F.2d 317, 320 (6th Cir. 1988).

In this case, it does not appear Plaintiff acted in bad faith in bringing this action. Given the unusual factual circumstances surrounding this case, it was not implausible for Plaintiff to contest Arbitrator Brown's decision. Although Plaintiff's arguments were unsuccessful, it does not follow that Plaintiff acted in bad faith. Further, Defendants made no showing Plaintiff acted in bad faith or had no basis for challenging Arbitrator Brown's decision. Accordingly, Defendants' request will be **DENIED**.

## IV. CONCLUSION

For the reasons stated above, the Court will **DENY** Plaintiff's motion for summary judgment (Court File No. 13) and will **GRANT** Defendants' motion for summary judgment (Court File No. 11). Additionally, the Court will **ORDER** Plaintiff to pay prejudgment interest on the Brown Award from the date of Arbitrator Brown's decision until the date the Court enters its judgment. However, the Court will **DENY** Defendants' request for attorney's fees and costs.

An order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**